## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MIKE OLESKI and RUDY CONDE,** | § | |
| **on Behalf of Themselves and on Behalf of** | § | |
| **All Others Similarly Situated,** | § | |
| | § | |
| *Plaintiffs*, | § | **CASE NO. _____** |
| | § | |
| **v.** | § | |
| | § | **COMPLAINT – CLASS ACTION** |
| **THE HOME DEPOT, INC. and** | § | |
| **HOME DEPOT U.S.A., INC.,** | § | |
| | § | |
| *Defendants*. | § | |

### PLAINTIFFS' CLASS ACTION COMPLAINT AND JURY DEMAND

Plaintiffs Mike Oleski and Rudy Conde ("Plaintiffs"), on behalf of themselves and all others similarly situated ("Class Members"), file this Class Action Complaint and Jury Demand ("Complaint") against The Home Depot, Inc. and Home Depot U.S.A., Inc. (collectively "Defendants" or "Home Depot").

### INTRODUCTION

1. Home Depot implemented an illegal policy requiring its hourly, non-exempt employees, including Plaintiffs and the Class Members, to undergo mandatory screenings – COVID-19 screenings and/or security screenings – each shift without pay. These mandatory screenings constitute compensable time worked by Plaintiffs and the Class Members and, as a result, by failing to pay them for such time worked, Home Depot violated Pennsylvania law and breached its agreement to pay Plaintiffs and the Class Members for all "hours worked."

2. Home Depot's conduct violates Pennsylvania statutory law because Home Depot failed to pay Plaintiffs and the Class Members overtime pay for hours worked over 40 hours in a workweek, as required by the Pennsylvania Minimum Wage Act ("PMWA"), 43 P.S. §§ 333.101

*et seq.* Home Depot's conduct also violates Pennsylvania common law because Home Depot failed to pay Plaintiffs and the Class Members for all hours worked in those weeks when they worked less than 40 hours in a week.

3.      Plaintiffs bring this lawsuit as a class action under Rule 23 of the Federal Rules of Civil Procedure to recover unpaid wages, penalties, and attorneys' fees and costs due to them and similarly situated employees.

## PARTIES

### A.      Plaintiffs

4.      Plaintiff Mike Oleski ("Plaintiff Oleski") is an individual residing in Pittson, Pennsylvania.  He worked as an hourly, non-exempt employee for Home Depot in Pennsylvania.

5.      Plaintiff Rudy Conde ("Plaintiff Conde") is an individual residing in Jenkins Township, Pennsylvania.  He worked as an hourly, non-exempt employee for Home Depot in Pennsylvania.

### B.      Defendants

6.      Defendant The Home Depot, Inc. is a publicly traded Delaware corporation with its headquarters in Atlanta, Georgia.  Its registered agent is CT Corporation System at 1635 Market Street, Philadelphia, Pennsylvania 19103.

7.      Defendant Home Depot U.S.A., Inc. is a Delaware corporation with its headquarters in Atlanta, Georgia.  Its registered agent is Corporation Service Company at 2595 Interstate Drive, Suite 103, Harrisburg, Pennsylvania 17110.

8.      For all intents and purposes, The Home Depot, Inc. and Home Depot U.S.A., Inc. are effectively the same company and operate a single enterprise, despite their corporate fragmentation.  Upon information and belief, The Home Depot, Inc. and Home Depot U.S.A., Inc.

share common management, ownership, and financial control, and their labor relations are under centralized control.

9.      In particular, The Home Depot, Inc. and Home Depot U.S.A., Inc. operate a nationwide chain of retail stores that sell tools, construction products, appliances, and services under the name "The Home Depot" under the control of the same senior level management. Indeed, The Home Depot, Inc. and Home Depot U.S.A., Inc. advertise themselves as a unified entity through the same website.

10.      The Home Depot, Inc. and Home Depot U.S.A., Inc. represent themselves to the public as one company operating at multiple locations.  They share employees, have a common management, pool their resources, operate from the same headquarters, have common ownership, and have the same operating name.

11.      The Home Depot, Inc. and Home Depot U.S.A., Inc. operate under a unified business model and part of that unified business model is the wage violations alleged in this Complaint.

**C.      Class Members**

12.      The "PMWA Class Members" are all current and former hourly paid employees of Home Depot who underwent a COVID-19 screening and/or security screening during at least one week in Pennsylvania in the three-year period before the filing of the Complaint until final resolution of this action.

13.      The "Common Law Class Members" are all current and former hourly paid employees of Home Depot who underwent a COVID-19 screening and/or security screening during at least one week in Pennsylvania when they worked less than 40 hours in the four-year period before the filing of the Complaint until final resolution of this action.

14.     The PMWA Class Members and the Common Law Class Members shall be collectively referred to as the "Class Members."

## JURISDICTION AND VENUE

15.     This Court has personal jurisdiction over Home Depot (both The Home Depot, Inc. and Home Depot U.S.A., Inc.) because Home Depot has purposefully availed itself of the privileges of conducting activities in Pennsylvania and established minimum contacts sufficient to confer jurisdiction.  Specifically, Home Depot does business in Pennsylvania, maintains offices in Pennsylvania, advertises in Pennsylvania, markets to Pennsylvania consumers, and employs Pennsylvania residents.  The violations of law forming the basis of this action also occurred in Pennsylvania.  The assumption of jurisdiction over Home Depot will not offend traditional notions of fair play and substantial justice and is consistent with the constitutional requirements of due process.  Finally, Home Depot has registered to do business in Pennsylvania and maintains a registered agent for service of process in Pennsylvania.  As a result, Home Depot has consented to personal jurisdiction in Pennsylvania.

16.     This Court has subject matter jurisdiction over this class action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) ("CAFA").  Under CAFA, this Court has original jurisdiction over Plaintiffs' Rule 23 class action claims because the matter in controversy is believed to exceed $5,000,000, and because Plaintiffs and Home Depot are citizens of different states – specifically, both Plaintiffs are citizens of Pennsylvania and both The Home Depot, Inc. and Home Depot U.S.A., Inc. are citizens of Delaware, where they are incorporated, and Georgia where they maintain their principal place of business.  Moreover, the number of proposed Class Members in Pennsylvania is believed to exceed 100 individuals.

17.     Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in this district, including many of the alleged wrongs. Plaintiffs worked in this district, were denied wages in this district, and Home Depot operates a facility in this district – namely, Building 8618 located at 200 Technology Drive, Pittston, Pennsylvania 18640.

## COVERAGE UNDER THE PMWA

18.     At all material times, Home Depot has been governed by and subject to the PMWA.

19.     At all material times, Home Depot has been an employer within the meaning of the PMWA. *See* 43 P.S. § 333.103(g).

20.     At all material times, Plaintiffs and the Class Members have been employees within the meaning of the PMWA. *See* 43 P.S. § 333.103(h).

21.     At all material times, Home Depot was and is legally responsible for the unlawful conduct, policies, practices, acts, and omissions as described and set forth in this Complaint, as the employer of Plaintiffs and the Class Members.

## FACTUAL BACKGROUND

### A.     Plaintiffs' Employment with Home Depot

22.     Home Depot is the world's largest home improvement retailer with approximately 475,000 employees and more than 2,300 stores.  Home Depot operates numerous stores and facilities in Pennsylvania.  Home Depot employs hourly workers to provide services to Home Depot's customers, including in Pennsylvania.

23.     Specifically, Home Depot operates retail stores and return centers.  Retail stores are large buildings where customers can purchase tools, construction products, appliances, and services.  At these retail stores, Home Depot employs hourly workers to stock items, work as

cashiers, unload items, and other various tasks. Home Depot operates retail stores throughout Pennsylvania

24.     Home Depot also operates return centers. Return centers are large facilities where Home Depot receives and processes products that have been returned from customers. At these return centers, Home Depot employs hourly workers to process and dispose of products that are returned by customers. These workers operate forklifts, operate machines for disposal of products, and other various tasks. Home Depot operates return centers throughout Pennsylvania.

25.     Plaintiff Oleski worked as an hourly, non-exempt employee for Home Depot. He worked at the return center in Pittston, Pennsylvania. He worked from approximately May 2021 to September 2024. He worked in the recycling department as an associate employee. He generally worked four days per week at ten hours each shift. His schedule varied. He was paid an hourly rate of approximately $24.18 per hour. In one or more individual workweeks during his employment, he worked 40 or more hours. When adding the unpaid work described in this Complaint, he regularly worked more than 40 hours each week. He worked with hundreds of other employees of Home Depot.

26.     Plaintiff Conde worked as an hourly, non-exempt employee for Home Depot. He worked at the return center in Pittston, Pennsylvania. He worked from approximately November 2021 to July 2024. He worked in the recycling department as an associate employee. He generally worked four days per week at ten hours each shift. His schedule was normally Monday through Thursday, 6:00 am to 4:30 pm. He was paid an hourly rate of approximately $24.18 per hour. In one or more individual workweeks during his employment, he worked 40 or more hours. When adding the unpaid work described in this Complaint, he regularly worked more than 40 hours each week. He worked with hundreds of other employees of Home Depot.

**B.     Plaintiffs and the Class Members Were Not Paid for All Work Time as a Result of Completing Security Screenings "Off the Clock"**

27.     As hourly, non-exempt employees, Plaintiffs and the Class Members were required to clock-in and clock-out each day.  Unfortunately, Home Depot did not pay Plaintiffs and the Class Members for all hours that they worked each day.

28.     Home Depot required its employees to arrive at its stores and facilities prior to the start of their scheduled shifts.  However, when employees arrived for their scheduled shifts, they were not allowed to clock-in for the day.  That is because Home Deport required its employees to undergo a mandatory security screening prior to clocking-in each day.

29.     Although the security screening was required by Home Depot, Home Depot did not pay any of its employees, including Plaintiffs and the Class Members, for the time spent undergoing the security screening.   As a result, Home Depot did not pay Plaintiffs and the Class Members for all hours they worked at Home Depot's stores and facilities.

30.     In particular, prior to the start of their scheduled shifts, Home Depot employees were required to form a line at the entrance to the store or facility.  Home Depot employees were then called one-by-one to a checkpoint where the security screening took place.  During the security screenings, Home Depot employees were required to empty their pockets, remove all metal objects, and submit any bags and other personal items to be searched.

31.     After that, Home Depot employees were required to walk one-by-one through a metal detector.  If the metal detector's alarm sounded, the employee was required to undergo a secondary security screening.  During the secondary security screening, the Home Depot employee was subject to a personal search with a handheld wand to detect and identify any unauthorized items in the possession of the Home Depot employee.  If the employee passed the screening, the employee was then allowed to walk to the next station where the employee was able to clock-in.

32.     The amount of time it took to wait in line and undergo the security screening was approximately 10 minutes to 15 minutes on average. This amount of time could be longer depending upon the number of other Home Depot employees in line for the security screening. The security screening occurred each day at each Home Depot store and facility in Pennsylvania and no Home Depot employee would be permitted to work without first passing the security screening.

33.     In fact, given that long lines could form, Home Depot employees needed to show up well before the start of their shifts to have enough time to wait in line and complete the screening. Plaintiffs and the Class Members arrived at the Home Depot stores and facilities at times 15 minutes to 30 minutes before the start of their shifts so that they would have enough time to complete the mandatory on-site screening and then clock-in by the start of their scheduled shift.

34.     At the end of each day, Home Depot employees were required to clock-out and then pass an exit screening before leaving the store or facility. The exit screening was the same as the pre-shift security screening process, just performed after Home Depot employees clocked-out.

35.     The amount of time it takes to wait in line and undergo the security screening at the end of the shift was approximately 10 minutes to 20 minutes on average. This amount of time could be longer depending upon the number of other Home Depot employees in line. In fact, long lines at the end of the shift were common as Home Depot scheduled hundreds of employees to end their shifts at the same time. This exit security screening occurred each day at each Home Depot store and facility in Pennsylvania.

36.     The pre-shift and post-shift security screenings should have been paid for by Home Depot because they constitute compensable hours worked both under Pennsylvania law and the Plaintiffs' and the Class Members' agreements with Home Depot. During this time, Home Depot

required Plaintiffs and the Class Members to be on Home Depot's premises and they were subject to Home Depot's control.

37.    "Hours worked" under Pennsylvania law includes four separate categories of an employee's time:

> (1) "time during which an employee is required by the employer to be on the premises of the employer,"
>
> (2) "[time during which an employee is required by the employer] to be on duty or to be at the prescribed work place,"
>
> (3) "time spent in traveling as part of the duties of the employee during normal working hours," and
>
> (4) "and time during which an employee is employed or permitted to work."

38.    Here, the security screenings are compensable because the security screenings were required by Home Depot and were not optional.  Plaintiffs and the Class Members were required to comply with Home Depot's instructions and were required to complete both the entrance and exit security screenings each shift under the threat of discipline, including possible termination.

39.    These security screenings were also undertaken on Home Depot's premises and Plaintiffs and the Class Members were confined to Home Depot's premises while they waited for the security screenings and during the security screenings.

40.    The security screenings were also controlled by Home Depot.  Indeed, Plaintiffs and the Class Members were required to follow Home Depot's instructions while they waited for the security screenings and during the security screenings.

41.    During the security screenings, Home Depot compelled Plaintiffs and the Class Members to perform specific tasks, such as lining up, emptying their pockets, walking through the metal detectors, submitting to a wand search, and handing over their bags and other personal items to be searched.

42.     During the security screenings, Home Depot directed, commanded, and restrained its employees; prevented them from using that time effectively for their own purposes; and Plaintiffs and the Class Members remained subject to Home Depot's control during the security screenings.

43.     The security screenings were undertaken primarily for the benefit of Home Depot. Plaintiffs and the Class Members derived zero benefit from being forced to undergo the security screenings prior to the start of their scheduled shifts and after the end of their scheduled shifts without pay.

44.     Under Pennsylvania law, the time spent undergoing the security screenings is compensable and should have been paid by Home Depot. *See Heimbach v. Amazon.com, Inc. (In re Amazon.com, Inc., Fulfillment Ctr. Fair Labor Standards Act (FLSA) & Wage & Hour Litig.)*, 255 A.3d 191, 204 (Pa. 2021).

45.     Likewise, the time spent undergoing the security screenings is compensable pursuant to the parties' agreement that Home Depot would pay Plaintiffs and the Common Law Class Members for all "hours worked"—a term of art defined by the regulations supporting the PMWA to include all time that a worker is required by the employer to be on the employer's premises. *See Lugo v. Farmers Pride, Inc.*, 967 A.2d 963, 969 (Pa. Super. Jan. 15, 2009).

46.     In light of Home Depot's conduct, Plaintiffs and the Class Members are owed significant unpaid wages and penalties.

**C.      Plaintiffs and the Class Members Were Not Paid for All Work Time as a Result of Completing COVID-19 Screenings "Off the Clock"**

47.     The novel Coronavirus has infected over 100 million Americans and caused the death of over one million Americans. (*See* https://coronavirus.jhu.edu/us-map, last visited

November 11, 2024).[1]  Following the outbreak of the Coronavirus, Home Depot implemented a company-wide policy requiring each of its hourly, non-exempt employees to undergo a physical and medical examination to check for symptoms of the Coronavirus each shift.  This examination was imposed by Home Depot as a requirement to work each shift.  The examination was conducted on Home Depot's premises, was required by Home Depot, and was necessary for each employee to perform his/her job for Home Depot.  Home Depot did not pay employees for the time they spent waiting to undergo and undergoing the examination.  Home Depot's conduct violates Pennsylvania law as well as Home Depot's agreement to pay Plaintiffs and the Common Law Class Members for all hours worked.

48.    Home Depot instituted the COVID-19 screenings from approximately April 2020 to October 2022.  During that time, Home Depot required Plaintiffs and the Class Members to undergo a physical and medical examination to screen for symptoms of COVID-19 prior to the start of their scheduled shifts.

49.    At the same location where the security screenings took place, employees were required to form a line and stand six feet apart.  Employees were then called one-by-one to a checkpoint where the COVID-19 screening took place.  Each employee whose shift was set to begin was required to undergo a temperature check and to answer questions about his/her health. If the employee passed the examination, he/she was then given a mask to wear. After putting on the mask, the employee then walked to a time clock located in the store or facility where the employee was allowed to clock-in for the day.

---

[1]    COVID-19 has infected nearly four million Pennsylvania residents, and has resulted in approximately 50,000 confirmed deaths. (*See* https://coronavirus.jhu.edu/region/us/Pennsylvania, last visited November 11, 2024).

50.    The amount of time it took to wait in line and undergo the examination was approximately 10 minutes to 15 minutes. This amount of time could be longer depending upon the number of other employees in line for the COVID-19 screening. The COVID-19 screening occurred each day at each Home Depot store and facility in Pennsylvania and no Home Depot employee would be permitted to work without first passing the COVID-19 screening.

51.    In fact, given that long lines could form, employees needed to show up well before the start of their shifts to have enough time to wait in line and clear the security screenings and then wait in line and complete the COVID-19 screenings. Plaintiffs and the Class Members arrived at the stores and facilities at times 20 minutes to 30 minutes before the start of their shifts so that they would have enough time to complete the mandatory screenings (security and COVID-19) and then clock-in on time for the day.

52.    The COVID-19 screening should have been paid by Home Depot because it constitutes compensable hours worked both under Pennsylvania law and Plaintiffs' and the Class Members' agreements with Home Depot. During this time, Home Depot required Plaintiffs and the Class Members to be on Home Depot's premises and they were subject to Home Depot's control.

53.    Plaintiffs and the Class Members were required to follow Home Depot's instructions while awaiting and during the COVID-19 screening. Home Depot required every employee to complete the COVID-19 screening and it was not optional. Indeed, the COVID-19 screening was required by Home Depot and its employees were required to comply under threat of discipline, including possible termination.

54.    Additionally, Plaintiffs and the Class Members were confined to the premises of Home Depot when they waited for the examination and during the examination.

55.     Moreover, Home Depot compelled its employees to perform specific tasks during the examinations. They were required to answer questions, submit to have their temperature taken, and wear masks.

56.     In other words, Home Depot required its employees to be on Home Depot's premises, and directed, commanded, and restrained its employees during the COVID-19 examinations; prevented them from using that time effectively for their own purposes; and Plaintiffs and the Class Members remained subject to Home Depot's control during the examinations.

57.     The COVID-19 screenings were also necessary to the principal work performed by Plaintiffs and the Class Members and were necessary to ensure a safe workplace. The COVID-19 examinations were also undertaken on Home Depot's premises, were controlled and required by Home Depot, and undertaken primarily for the benefit of Home Depot, i.e., to ensure that its stores and facilities would remain open to provide services to customers and to earn billions in profits during the pandemic.

58.     Indeed, Home Depot required Plaintiffs and the Class Members to undergo this screening for the purposes of overall safety in the Home Depot stores and facilities and to prevent Plaintiffs and the Class Members from inadvertently and unintentionally infecting the Home Depot stores and facilities or Home Depot products, and in turn, Home Depot's customers.  Likewise, the job duty of Plaintiffs and the Class Members was to serve the customers of Home Depot and the screening was necessary to ensure that Plaintiffs and the Class Members could safely provide that service to Home Depot's customers.

59.     Home Depot implemented the mandatory COVID-19 examinations to ensure that the virus did not disrupt the work performed by Plaintiffs and the Class Members or affect the

business operations of Home Depot by infecting the Home Depot stores and facilities. Without the COVID-19 screening, workers could inadvertently or unintentionally bring the virus into the Home Depot stores and facilities causing a mass breakout of the virus infecting hundreds to thousands of other Home Depot workers, in which case Plaintiffs and the Class Members could not be able to perform their work for Home Depot.  Furthermore, the COVID-19 virus directly affects the health of workers.  If Plaintiffs and the Class Members became infected with the virus, their health would suffer.  Symptoms of the virus include fatigue, lack of strength, coughing, headaches, and other symptoms.  Plaintiffs and the Class Members could not perform their work for Home Depot if they were infected with the virus.

60.    Moreover, the COVID-19 screenings were necessary to the principal activity and primary job duty performed by Plaintiffs and the Class Members, which was to serve and assist Home Depot customers receiving their purchased items. The COVID-19 screenings were necessary for Plaintiffs and the Class Members to perform their primary job duty for Home Depot. If Home Depot cancelled the COVID-19 screenings, the Home Depot stores and facilities could get contaminated with the virus, and Home Depot would not be able to operate, losing billions of dollars in profits in the process. Therefore, the COVID-19 screenings were necessary to ensure that Home Depot's business operations could continue, Plaintiffs and the Class Members could do their jobs for Home Depot, and Home Depot could make billions in profits. Moreover, if Home Depot customers received products that were infected with the virus, the customers would likely no longer use Home Depot's services, causing Home Depot to lose business and profits.

61.    Thus, the COVID-19 screenings were necessary for Plaintiffs and the Class Members to do their work for Home Depot and without the screenings, Home Depot could not continue to operate.  Accordingly, the COVID-19 screenings increased the efficiency of Home

Depot's operations during the COVID pandemic, enabling Home Depot to earn record profits.

62.    Under these facts, the COVID-19 screenings were for the benefit of Home Depot. The COVID-19 screenings allowed Home Depot's operations to continue and therefore, allowed Home Depot to earn a profit. Similarly, the COVID-19 screenings benefited Home Depot's customers by allowing them to receive products in a timely basis and to receive products that were not contaminated, which in turn benefited Home Depot by having repeat business. Indeed, the COVID-19 screenings were conducted by Home Depot with the intent for Home Depot to benefit, to earn more profits, and to continue its business. In fact, Home Depot's business substantially grew during the pandemic and it appears that the pandemic provided a windfall for Home Depot's operations.

63.    The COVID-19 screenings were also primarily for the benefit of Home Depot because Home Depot's COVID-19 screening policy was intended to keep its stores and facilities as safe of a workplace as possible given the circumstances of the global pandemic. Home Depot's COVID-19 screening policy was also intended to ensure the safety of Home Depot's workers and to ensure that Home Depot complied with the law.   By making the workplace safe, Home Depot increased the efficiency of Home Depot's operations and allowed it to make billions in profits during the pandemic.   Indeed, having business operations continue without interruption undoubtedly increased the profits of Home Depot.  Similarly, complying with all laws ensured Home Depot could continue to operate and earn profits.  Moreover, having employees who are healthy and able to perform their work ensures that Home Depot can continue to operate and earn profits.

64.    The COVID-19 screenings were to ensure that the virus did not disrupt the work performed by Plaintiffs and the Class Members or affect the business operations of Home Depot.

If Home Depot stores and facilities suffered an infection outbreak, Home Depot would potentially have to find new employees or shut down its stores and facilities until it was safe to open again. Such an outbreak would harm Home Depot directly and cause it to lose significant profits. Given this substantial risk to Home Depot's business operations, Home Depot primarily benefitted from the COVID-19 screenings.

65. Under Pennsylvania law, the time spent undergoing the COVID-19 screenings is compensable and should have been paid by Home Depot. *See Heimbach v. Amazon.com, Inc. (In re Amazon.com, Inc., Fulfillment Ctr. Fair Labor Standards Act (FLSA) & Wage & Hour Litig.)*, 255 A.3d 191, 204 (Pa. 2021).

66. Likewise, the time spent undergoing the COVID-19 screenings is compensable time pursuant to the parties' agreement that Home Depot would pay Plaintiffs and the Common Law Class Members for all "hours worked"—a term of art defined by the regulations supporting the PMWA to include all time that a worker is required by the employer to be on the employer's premises. *See Lugo v. Farmers Pride, Inc.*, 967 A.2d 963, 969 (Pa. Super. Jan. 15, 2009).

67. In light of Home Depot's conduct, Plaintiffs and the Class Members are owed significant unpaid wages and penalties.

**D.    Plaintiffs and the Class Members Were Not Paid for All Work Time Under the Continuous Workday Rule**

68. After completing the pre-shift security screening and the COVID-19 screening, Plaintiffs and the Class Members were required to walk to the time clocks located inside the stores and facilities to clock-in for the day.

69. Similarly, after clocking-out at the end of each shift, Plaintiff and the Class Members were required to walk to the location of the exit screening, wait in line, and then complete the exit security screening.

70.     The entire pre-shift screening process, which includes waiting in line, completing the security screening, completing the COVID-19 screening, and walking to the time clocks, took approximately 15 minutes to 30 minutes on average per shift.  Similarly, after clocking-out, the time spent walking to the location of the exit security screening, waiting in line, and completing the exit security screening took approximately 15 minutes to 30 minutes on average per shift.

71.     Pursuant to the continuous workday rule, once the first compensable activity is performed, the continuous workday has started, and all subsequent activities performed are compensable regardless of the amount of time each specific individual activity takes. *See* 29 C.F.R. § 790.6(a).   The continuous workday rule requires compensation from the start of the first compensable activity to the last compensable activity. *See id*.  Specifically, section 790.6(a) states as follows:

> Periods of time between the commencement of the employee's first principal activity and the completion of his last principal activity on any workday must be included in the computation of hours worked to the same extent as would be required if the Portal Act had not been enacted.

*Id*.

72.     Similarly, the PMWA regulations define "hours worked" to include time during which an employee is required by the employer to be on the premises of the employer, to be on duty or to be at the prescribed workplace, time spent in traveling as part of the duties of the employee during normal working hours, and time during which an employee is employed or permitted to work. *See* 34 Pa. Code § 231.1(a).

73.     Therefore, Plaintiffs and the Class Members are entitled to compensation from the time they first arrived at the screening station in the morning to the time they clocked-in for the day.  Similarly, Plaintiffs and the Class Members are entitled to compensation from the time they clocked-out at the end of the day to the time they completed the exit screening.

74.     Plaintiffs and the Class Members were non-exempt employees.

75.     Plaintiffs and the Class Members were paid on an hourly rate basis.

76.     When they worked more than forty hours in a workweek, they were entitled to overtime pay.

77.     Due to the substantial pre-shift work and post-shift work, Plaintiffs and the Class Members were not paid for all time worked each day and are owed significant unpaid wages.

78.     Although Home Depot employs electronic clocking-in technology, this technology was not accessible to Plaintiffs and the Class Members before pre-shift screenings or after the post-shift screening.

79.     Home Depot's method of paying Plaintiffs and the Class Members in violation of Pennsylvania law was not based on a good faith and reasonable belief that their conduct complied with the law. Home Depot knew the requirement to pay for all time worked, but intentionally and/or recklessly chose not to do so.

## **CLASS ACTION ALLEGATIONS**

80.     Plaintiffs bring this action as a class action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure on behalf of the following Classes, which are comprised of:

> **PMWA Class**: All current and former hourly paid employees of Defendants who underwent a COVID screening and/or security screening in Pennsylvania during the three-year period before the filing of the Complaint to final resolution of this action.

> **Common Law Class**: All current and former hourly paid employees of Defendants who underwent a COVID-19 screening and/or security screening during at least one week in Pennsylvania when they worked less than 40 hours in the four-year period before the filing of the Complaint until final resolution of this action.

81.    <u>Numerosity</u>:  The number of members in the Classes is believed to exceed forty (40) and in fact, is likely to be in the thousands. This volume makes bringing the claims of each individual member of the Classes before this Court impracticable. Likewise, joining each individual member of the Classes as a Plaintiff in this action is impracticable. Furthermore, the identity of the members of the Classes will be determined from Home Depot's records, as will the compensation paid to each of them. As such, a class action is a reasonable and practical means of resolving these claims. To require individual actions would prejudice the Class Members and Home Depot.

82.    <u>Typicality</u>:  Plaintiffs' claims are typical of the Class Members' claims because like the members of the Classes, Plaintiffs were subject to Home Depot's uniform policies and practices and were compensated in the same manner as others in the Classes. Home Depot failed to pay the Class Members for all hours they worked. Additionally, members of the Classes worked substantially more than forty (40) hours in a week as non-exempt employees. Accordingly, Plaintiffs and the Class Members have been uncompensated and/or under-compensated in weeks when they worked less than 40 hours and in weeks when they worked more than 40 hours as a result of Home Depot's common policies and practices which failed to comply with Pennsylvania law. As such, Plaintiffs' claims are typical of the claims of the Class Members. Plaintiffs and all members of the Classes sustained damages arising out of and caused by Home Depot's common course of conduct in violation of law as alleged herein.

83.    <u>Adequacy</u>:  Plaintiffs are representative parties who will fairly and adequately protect the interests of the Class Members because it is in their interests to effectively prosecute the claims herein alleged in order to obtain the unpaid wages and penalties required under Pennsylvania law. Plaintiffs have retained attorneys who are competent in both class actions and

wage-and-hour litigation. Plaintiffs do not have any interest which may be contrary to or in conflict with the claims of the Class Members they seek to represent.

84.    <u>Commonality</u>:  Common issues of fact and law predominate over any individual questions in this matter. The common issues of fact and law include, but are not limited to:

a.    Whether Plaintiffs and the Class Members are entitled to compensation for the time spent in the COVID-19 screenings;

b.    Whether Plaintiffs and the Class Members are entitled to compensation for the time spent in the security screenings;

c.    The amount of time spent in the COVID-19 screenings;

d.    The amount of time spent in the security screenings;

e.    Whether Plaintiffs and the Class Members worked more than forty (40) hours in a workweek;

f.    Whether Home Depot failed to pay Plaintiffs and the Class Members wages for all hours worked, including overtime hours; and

g.    The proper measure of damages sustained by Plaintiffs and the Class Members.

85.    <u>Superiority</u>:  A class action is superior to other available means for the fair and efficient adjudication of this lawsuit.  Even in the event any member of the Classes could afford to pursue individual litigation against a company the size of Home Depot, doing so would unduly burden the court system. Individual litigation would magnify the delay and expense to all parties and flood the court system with duplicative lawsuits. Prosecution of separate actions by individual members of the Classes would create the risk of inconsistent or varying judicial results and establish incompatible standards of conduct for Home Depot.

86.     A class action, by contrast, presents far fewer management difficulties and affords the benefits of uniform adjudication of the claims, financial economy for the parties, and comprehensive supervision by a single court.  By concentrating this litigation in one forum, judicial economy and parity among the claims of individual Class Members are promoted. Additionally, class treatment in this matter will provide for judicial consistency. Notice of the pendency and any resolution of this action can be provided to the Class Members by mail, electronic mail, text message, print, broadcast, internet and/or multimedia publication. The identity of the members of the Classes are readily identifiable from Home Depot's records.

87.     This type of case is well-suited for class action treatment because: (1) Home Depot's practices, policies, and/or procedures were uniform; (2) the burden is on Home Depot to prove it properly compensated its employees including any potential exemptions that might apply; and (3) the burden is on Home Depot to accurately record hours worked by employees. Ultimately, a class action is a superior form to resolve the Pennsylvania claims detailed herein because of the common nucleus of operative facts centered on the continued failure of Home Depot to pay Plaintiffs and the Class Members per applicable Pennsylvania laws.

## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
### (On behalf of Plaintiffs and the PMWA Class Members)

88.     All previous paragraphs are incorporated as though fully set forth herein.

89.     The PMWA entitles employees to compensation for "all hours worked" in a workweek. *See* 43 P.S. § 333.104(a).

90.     At all material times, Plaintiffs and the PMWA Class Members were covered employees entitled to the above-described PMWA protections.

91.     Plaintiffs and the PMWA Class Members are not exempt from the PMWA.

92.     Home Depot has violated the PMWA by failing to pay Plaintiffs and the PMWA Class Members for all time associated with the mandatory COVID-19 screenings and/or security screenings. *See Heimbach v. Home Depot.com, Inc. (In re Home Depot.com, Inc., Fulfillment Ctr. Fair Labor Standards Act (FLSA) & Wage & Hour Litig.)*, 255 A.3d 191, 204 (Pa. 2021).

## SECOND CLAIM FOR RELIEF
### (On behalf of Plaintiffs and the PMWA Class Members)

93.     All previous paragraphs are incorporated as though fully set forth herein.

94.     The PMWA requires that employees receive overtime compensation "not less than one and one-half times" the employee's regular rate of pay for all hours worked over 40 in a workweek. *See* 43 P.S. § 333.104(c).

95.     At all material times, Plaintiffs and the PMWA Class Members were covered employees entitled to the above-described PMWA protections and worked more than 40 hours in a workweek.

96.     Plaintiffs and the PMWA Class Members are not exempt from the PMWA.

97.     Home Depot has violated the PMWA by failing to pay Plaintiffs and the PMWA Class Members for all time associated with the mandatory COVID-19 screenings and/or security screenings. *See Heimbach v. Home Depot.com, Inc. (In re Home Depot.com, Inc., Fulfillment Ctr. Fair Labor Standards Act (FLSA) & Wage & Hour Litig.)*, 255 A.3d 191, 204 (Pa. 2021).

## THIRD CLAIM FOR RELIEF – BREACH OF CONTRACT
### (On behalf of Plaintiffs and the Common Law Class Members)

98.     All previous paragraphs are incorporated as though fully set forth herein.

99.     A valid and enforceable agreement existed between Plaintiffs and Home Depot, and the Common Law Class Members and Home Depot, the terms and conditions of which include, but are not limited to, an agreement by Plaintiffs and the Common Law Class Members to perform

services for Home Depot, and for Home Depot to pay Plaintiffs and the Common Law Class Members at an agreed hourly rate for all time in which they performed compensable work.

100.    More specifically, under Pennsylvania law, the elements of an enforceable contract are an offer, acceptance, consideration, and mutual meeting of the minds. *See Schreiber v. Olan Mills*, 426 Pa. Super. 537, 627 A.2d 806, 808 (Pa. Super 1993).

101.    Here, a contract was formed at the time Plaintiffs and the Common Law Class Members were hired by Home Depot.  The contract was an oral offer made at the time of hire. The contract was then documented in an offer letter.   The terms of the contract were straightforward.   Plaintiffs and the Common Law Class Members agreed to perform "hours worked" for Home Depot in exchange for Home Depot's payment of an hourly rate for all "hours worked" by Plaintiffs and the Common Law Class Members.  That is, Home Depot made an offer to each Plaintiff to pay each Plaintiff an hourly rate for all "hours worked" for Home Depot. Plaintiffs and the Common Law Class Members accepted that offer and began performing this service for Home Depot.  "Hours worked" was understood by Plaintiffs, the Common Law Class Members, and Home Depot to have the meaning ascribed to it under Pennsylvania law, including the PMWA.  Under Pennsylvania law, "hours worked" is the "time during which an employee is required by the employer to be on the premises of the employer, to be on duty or to be at the prescribed work place, time spent in traveling as part of the duties of the employee during normal working hours and time during which an employee is employed or permitted to work." *See* 34 Pa. Code § 231.1.  This agreement to be paid for all "hours worked" was manifested by the parties' actions.  Home Depot paid Plaintiffs and the Common Law Class Members for all hours that they were on duty at the Home Depot store and facility and for all hours that they were required to be at work.  This conduct demonstrates that the agreement was for Home Depot to pay for "hours

worked" by Plaintiffs and the Common Law Class Members.

102.    Further, the consideration provided by Home Depot to Plaintiffs was a set amount of money for each hour worked.  Moreover, Home Depot and Plaintiffs and the Common Law Class Members had a meeting of the minds.  Immediately after being hired, Home Depot paid Plaintiffs and the Common Law Class Members the agreed upon hourly rate for all "hours worked" – namely, the time Plaintiffs and the Common Law Class Members were on duty for Home Depot and/or required to be at the Home Depot store and facility.  There was also specific performance by Home Depot and Plaintiffs and the Common Law Class Members.  Plaintiffs and the Common Law Class Members performed the duties for Home Depot at the Home Depot store and facility and Home Depot paid the agreed upon hourly rate.

103.    However, Home Depot breached the agreement to pay Plaintiffs and the Common Law Class Members the agreed upon hourly rate for all "hours worked."  Under Pennsylvania law, a party alleging breach of contract "must establish (1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract[,] and (3) resultant damages." *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 225 (3d Cir. 2003) (alteration in original) (internal quotation marks and citation omitted).

104.    Here, a breach of the contract was committed by Home Depot.  Home Depot had a duty to pay Plaintiffs and the Common Law Class Members for all "hours worked."  However, Home Depot failed to pay Plaintiffs and the Common Law Class Members for time they spent in the COVID-19 screenings and/or security screenings, and therefore, breached its agreement with Plaintiffs and the Common Law Class Members.  The COVID-19 screenings and security screenings constitute "hours worked" because Plaintiffs and the Common Law Class Members were required to undergo these screenings by Home Depot. Indeed, the COVID-19 screenings and

security screenings were a mandatory condition of Home Depot and failure to comply would result in discipline. Thus, the COVID-19 screenings and security screenings constitute time Plaintiffs and the Common Law Class Members were "required by the employer to be on the premises." Plaintiffs and the Common Law Class Members had simply no option to avoid the COVID 19 screenings and/or security screenings when they entered their workplace — the Home Depot store or facility.

105.    Additionally, Plaintiffs and the Common Law Class Members were "on duty" when they were subjected to the COVID-19 screenings and/or security screenings. Given that the COVID-19 screenings and/or security screenings were obligatory and occurred on Home Depot's premises, Plaintiffs and the Common Law Class Members were required to complete them.

106.    Further, Plaintiffs and the Common Law Class members were required by Home Depot to "be at the prescribed work place," given that they were required to report to the Home Depot store or facility and required to participate in the COVID-19 screenings and/or security screenings.

107.    Finally, Plaintiffs and the Common Law Class Members suffered damages as a result of Home Depot's breach of the agreement.  Plaintiffs and the Common Law Class Members were not paid for all "hours worked" in those weeks when they worked less than 40 hours for Home Depot.  Consequently, they were denied monetary compensation that they are due under the law.

108.    Plaintiffs and the Common Law Class Members duly performed under the agreement at Home Depot's direction and for its benefit.

109.    Home Depot failed and refused to fulfill its obligations under the agreement by not paying for all time worked by Plaintiffs and the Common Law Class Members.

110.    Plaintiffs and the Common Law Class Members are entitled to recover damages from these breaches for the last four years.

### FOURTH CLAIM FOR RELIEF – UNJUST ENRICHMENT
### (On behalf of Plaintiffs and the Common Law Class Members)

111.    All previous paragraphs are incorporated as though fully set forth herein.

112.    This claim is plead in the alternative to the breach of contract claim.

113.    Indeed, in the alternative to the breach of contract claim, Plaintiffs and the Common Law Class Members bring a claim for unjust enrichment. "[A] party may plead alternative theories of breach of contract and unjust enrichment when there is a dispute about the existence or validity of the contract in question." *See Power Restoration Int'l, Inc. v. Pepsico, Inc.*, No. 12-1922, 2013 U.S. Dist. LEXIS 148016, at *20 (E.D. Pa. Oct. 11, 2013) (citations and quotations omitted); *see also Khawaja v. RE/MAX Cent.*, 2016 PA Super 261, 151 A. 3d 626, 633 (Pa. Super. 2016).

114.    The elements of unjust enrichment are: (1) benefits conferred on Home Depot by Plaintiffs and the Common Law Class Members; (2) appreciation of such benefits by Home Depot; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for Home Depot to retain the benefit without payment of value.

115.    Home Depot has been unjustly enriched at the expense of Plaintiffs and the Common Law Class Members by failing to pay for pre-shift and post-shift hours worked by Plaintiffs and the Common Law Class Members.

116.    Home Depot knowingly and/or intentionally accepted the benefit of the pre-shift and post-shift hours performed by Plaintiffs and the Common Law Class Members, despite its policy and practice of failing to pay Plaintiffs and the Common Law Class Members for such work. In particular, Home Depot received the benefits described in this Complaint of Plaintiffs' and the Common Law Class Members' pre-shift and post-shift work – namely, the time spent in the

COVID-19 screenings and/or security screenings.

117.    In particular, Plaintiffs and the Common Law Class Members were required to report to work to perform and provide valuable services to Home Depot without full pay.  Home Depot accepted and retained those benefits and was the beneficiary of those benefits.

118.    The COVID-19 screenings and security screenings primarily and substantially benefited Home Depot for numerous reasons, including but not limited to the following: (1) the COVID-19 screenings were designed to ensure a safe workplace; (2) the security screenings prevent theft from Home Depot's premises, (3) the COVID-19 screenings and security screenings safeguarded Home Depot's employees, products, and customers; (4) the COVID-19 screenings were designed to increase the efficiency of Home Depot's business operations; (5) the security screenings ensured that all items at Home Depot's locations were safe and secure, (6) the security screenings prevent the loss of inventory, (7) the COVID-19 screenings were to ensure that Home Depot complied with health and safety regulations issued by Pennsylvania and other government agencies; (8) the COVID-19 screenings prevented disruption to Home Depot's business operations; (9) the COVID-19 screenings and security screenings allowed employees to do their jobs safely and effectively; and (10) the COVID-19 screenings and security screenings ensured that Home Depot continued with its business operations so that it could make record-breaking profits.

119.    The COVID-19 screenings and security screenings were not primarily for the benefit of Plaintiffs and the Common Law Class Members.  If Plaintiffs and the Common Law Class Members passed the COVID-19 screenings and/or security screenings, they were merely allowed to work their shift or exit the facility/store.  Home Depot mandated these screenings and derived all of the benefit from them.  As a result, Home Depot deprived Plaintiffs and the Common

Law Class Members of full pay during their shift by not paying them for the time spent in the COVID-19 screenings and/or security screenings.

120.    Such wrongful conduct demonstrates bad faith and undue advantage on the part of Home Depot.

121.    It would be unjust and inequitable for Home Depot to retain the benefit of the unpaid work performed by Plaintiffs and the Common Law Class Members.

122.    Plaintiffs and the Common Law Class Members are entitled to recover damages under this claim for the last four years.

### FIFTH CLAIM FOR RELIEF – QUANTUM MERUIT
### (On behalf of Plaintiffs and the Common Law Class Members)

123.    All previous paragraphs are incorporated as though fully set forth herein.

124.    Plaintiffs and the Common Law Class Members performed and provided valuable pre-shift and post-shift work – namely, the time spent in the COVID-19 screenings and/or security screenings – to Home Depot during their employment with Home Depot.

125.    The pre-shift and post-shift work was primarily for the benefit of Home Depot.

126.    Home Depot accepted, appreciated, and retained the benefit of Plaintiffs' and the Common Law Class Members' pre-shift and post-shift work.

127.    No contract exists between Plaintiffs and Home Depot, and the Common Law Class Members and Home Depot.

128.    Home Depot had reasonable notice and/or knowledge that Plaintiffs and the Common Law Class Members expected to be compensated for their pre-shift and post-shift hours worked.

129.    Home Depot failed to pay Plaintiffs and the Common Law Class Members the reasonable value of their pre-shift and post-shift work.

130.     Under the facts described and set forth in this Complaint, it would be inequitable for Home Depot to retain the benefit without payment of value to Plaintiffs and the Common Law Class Members.

131.     Plaintiffs and the Common Law Class Members are entitled to recover damages under this claim for the last four years.

## JURY DEMAND

132.     Plaintiffs hereby demand a trial by jury on all issues.

## PRAYER FOR RELIEF

Plaintiffs, individually and on behalf of all the Class Members, pray that the Court:

1. Certify that this action may proceed as a class action under Fed. R. Civ. P. 23;

2. Appoint Plaintiffs as Representatives of the Classes, and appoint their counsel as Class Counsel;

3. Find and declare that Home Depot's policies and/or practices described above violate Pennsylvania law;

4. Award all unpaid wages, unpaid overtime, liquidated damages, penalties, interest, and/or restitution to be paid by Home Depot for the alleged causes of action;

5. Award costs, and expenses, including reasonable attorneys' fees and expert fees;

6. Award pre-judgment and post-judgment interest, as provided by law; and

7. Order such other and further legal and equitable relief the Court deems just, necessary, and proper.

Date:  November 14, 2024

Respectfully submitted,

By:   /s/ *Matthew S. Parmet*
      Matthew S. Parmet
      PA Bar # 331609
      PARMET PC
      2 Greenway Plaza, Ste. 250
      Houston, Texas 77046
      phone      713 999 5200
      matt@parmet.law

      and

      Don J. Foty
      (will apply for admission *pro hac vice*)
      Texas State Bar No. 24050022
      dfoty@hftrialfirm.com
      Fazila Issa
      (will apply for admission *pro hac vice*)
      Texas State Bar No. 24046136
      fissa@hftrialfirm.com
      HODGES & FOTY, LLP
      2 Greenway Plaza, Suite 250
      Houston, Texas 77046
      Telephone: (713) 523-0001
      Facsimile: (713) 523-1116

      *Counsel for Plaintiffs and the Class Members*